JAMES FREY, Defendant in Error, *vs.* THE KERENS-DONNEWALD COAL COMPANY, Plaintiff in Error.

*Opinion filed December 22, 1915.*

1. WORKMEN'S COMPENSATION—*what justifies an award of compensation.* An award of compensation for permanent injury is justified by evidence which shows that the workman has suffered paralysis of one side, so as to incapacitate him for work, as the result of a blow on the head from a prop, which fell upon him while he was working as a miner in a coal mine.

2. SAME—*Workmen's Compensation act of 1911 was properly passed by General Assembly.* The Workmen's Compensation act of 1911 was properly passed by the General Assembly and is a valid law. (*Dragovich* v. *Iroquois Iron Co.* 269 Ill. 478, followed.)

3. CONSTITUTIONAL LAW—*what must be shown where it is claimed a bill was not printed.* Where a law is attacked upon the ground that the bill was not printed before its final passage by the house of representatives, not only the entire record of the bill in the journal of the house, from its introduction to its final passage, must be put in evidence, but it must also appear by the testimony of someone who has examined the entire contents of the journal that the particular pages introduced in evidence constitute the entire record of proceedings in the house with reference to the bill.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. W. E. HADLEY, Judge, presiding.

KEEFE & SULLIVAN, for plaintiff in error.

SPRINGER & BUCKLEY, and WARNOCK, WILLIAMSON & BURROUGHS, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

James Frey (herein referred to as the plaintiff) was employed during the year 1912 as a miner in the coal mine of the Kerens-Donnewald Coal Company, located at Worden, Illinois. Both Frey and the coal company had elected to be bound by the provisions of the Workmen's Compensation act of 1911, in force May 1, 1912. On November 22, 1912, while engaged in mining coal in said mine, plaintiff was knocked down and injured by a mine prop. Being incapacitated for work he was paid compensation by the defendant company at the rate of $1.42 per day up to November 15, 1913, making a sum total of $489.88. He filed his petition in the county court of Madison county asking for the appointment of an arbitrator to fix the amount of compensation to be paid to him under the Workmen's Compensation act, which the court did. The plaintiff and the defendant each named an arbitrator, and two of said arbitrators made a report finding that plaintiff was entitled to compensation at the rate of $12 per week for 291⅔ weeks, or a total of $3500, less $489.88 paid him by the defendant. Defendant then filed its petition in the circuit court and asked to have the award of the arbitrators reviewed under the provisions of said act. A jury was waived, and on a trial before the court November 25, 1914, the circuit court made the same findings as the arbitrators, that the plaintiff was permanently injured and totally disabled, as aforesaid, and that he was entitled to recover from the defendant for his full compensation the sum of $3500, less said amount paid by it, or $3010.12, payable at the rate of $12 per week; that as no payment had been made by the defendant since November 15, 1913, the defendant should then pay $636 cash, that being the sum due since said last date at $12 per week, and that the remainder of $2374.12 be paid at the rate of $12 per week, beginning with the date of the judgment. This writ of error is prosecuted by the defendant to reverse the judgment.

Only two grounds are urged by the defendant for a reversal of the judgment: (1) That there is no evidence in the record sufficient to justify the award of compensation to the plaintiff upon the ground that he was injured while in the course of his employment, because his paralysis was not due to his said injury; (2) that said act of 1911 was never legally passed by the General Assembly, because the bill, with its amendments, was not printed, as required by the constitution, before its final passage in the house.

*First*—The record in this case shows a stipulation by the parties to this proceeding that plaintiff was injured while working for the defendant, in the course of his employment. Plaintiff testified that the prop in question struck him on the side of the head, midway between the top of his ear and the center of the top of his head, while he was mining coal for the defendant in its said mine and knocked him about fifteen feet against the rib of coal; that the top of his head was affected and his skull fractured; that he worked seven or eight days thereafter, and on Sunday morning, while he was reading a newspaper, he got so he couldn't walk and his wife put him to bed; that he was taken to the hospital in Granite City, where they took out pieces of his skull and some "bruised blood;" that the injury caused all his strength to leave him, and that he can't use his right hand or his right leg, and that the right side of his body is paralyzed; that he then had no better use of his limbs than he had three months after the injury, and has not been able to do any work since he was paralyzed and sometimes can scarcely walk. It was stipulated that his average earnings for the year previous to his injury were three dollars per day.

Drs. D. L. Bly, William McBrien and E. C. Ferguson testified for plaintiff and all of them qualified as expert physicians of more than fifteen years' practice in medicine and surgery. All of them testified that plaintiff had paralysis in the right leg and arm and suffered from a pain in the

left side of the head, where the blow was received. Dr. McBrien testified that he made a careful examination of the plaintiff's head and found a dent pressure over the place, on the left side of his head, where he said he had been struck with a prop or block of wood in the mine; that he assisted in trephining his skull at the place he was hurt, took out a piece of bone and relieved the pressure, and found the bone dark and discolored but was not sure that he found a blood clot; that the operation was successful in opening up and relieving the pressure; that he has improved some but cannot use the right side of his body much and drags it and in his condition could not perform any hard labor. He gave it as his opinion that his condition was due to an injury to the skull caused by a blow and that it is permanent. Dr. Ferguson testified that in his judgment the plaintiff's condition was due to the injury or blow on his head. He also testified that the fact that plaintiff worked every day after the injury would increase his chances of producing a hemorrhage in the brain if the injury was such as to have destroyed the vessels weakened by the blow; also, that if plaintiff continued to work for eight days following that blow without being impaired from his work that might lead him to believe other causes might have acted later. Dr. Bly testified that he examined the plaintiff and thought the cause of his paralysis was due to a hemorrhage.

The foregoing evidence amply sustains the findings of the court. The defendant offered no evidence to contradict the four witnesses aforesaid, and they are all the witnesses who testified on this branch of the case.

*Second*—For the purpose of proving that the Workmen's Compensation act of 1911 was not legally passed by the General Assembly the defendant produced before the court two large volumes certified by James A. Rose, Secretary of State, to be true copies of the original journals, respectively, of the senate and house of the Forty-seventh

General Assembly of Illinois. The fly-leaves and a number of pages in each of said volumes were introduced, which purported to show the introduction of Senate Bill No. 283 by Mr. Henson and various proceedings in the house and senate relating to the passage of the bill, which, as finally passed, is what is known as the Workmen's Compensation act of 1911. The entire evidence introduced by the defendant failed to make the proper proof that said bill was not printed before its final passage in the house. The presumption is in favor of the validity of the act, and it can only be overcome by clear and convincing proof so as to satisfy the court, beyond a reasonable doubt, of its invalidity. (*People* v. *Joyce,* 246 Ill. 124.) To prove that a bill was not printed before its final passage by the house, not only the entire record of the bill in the journal of the house, from its introduction to its final passage, should be put in evidence, but it should also further appear from the evidence of someone who has examined the entire contents of the journal, that the pages introduced in evidence constitute the complete record of the proceedings in the house with reference to the bill. The proof in this particular was not shown to be, and does not purport to be, the complete record in the house journal with reference to the introduction and passage of the bill.

The contention of the defendant, however, that the act is invalid because the house journal does not show that the bill was printed before its final passage, cannot be sustained in any event as this court has passed upon that very question, and has held that the journal of the house contains evidence that the bill was printed before its final passage, and that the act was legally passed. *Dragovich* v. *Iroquois Iron Co.* 269 Ill. 478.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*