WEBBER v. DORT MOTOR CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—SPECIFIC AWARD—PARTIAL DISABILITY.

Where an employee suffered an injury in the course of his employment resulting in the amputation of one-half of the thumb and the third and fourth fingers, and the stiffening of the first and second fingers of the left hand, testimony from which the inference might fairly be drawn that his earning capacity at either common or skilled labor is less than it would be if the stiffened fingers were normal justified an award under the workmen's compensation act for partial disability in addition to the specific award for the loss caused by the amputation.

Certiorari to Department of Labor and Industry. Submitted January 5, 1922. (Docket No. 26.) Decided March 30, 1922.

Algernon Webber presented his claim for compensation against the Dort Motor Company for accidental injuries in defendant's employ. From an order deny-

On compensation recoverable generally under workmen's compensation acts, see notes in L. R. A. 1916A, 129, 377; L. R. A. 1917D, 164.

ing a petition to discontinue payments under an agreement, defendant and the Michigan Mutual Liability Company, insurer, bring certiorari.   Affirmed.

*Beaumont, Smith & Harris* (*Hal H. Smith* and *Albert E. Meder*, of counsel), for appellants.

*Fred L. Warner*, for appellee.

MOORE, J.   The writ of certiorari seeks to review an allowance for compensation made by the department of labor and industry to Algernon Webber.   In July, 1918, Mr. Webber entered the employ of the Dort Motor Company at its Belding plant and a few days later started operating a shaper.   December 21, 1918, his hand was caught in the machine, resulting in the amputation of one-half the thumb, the third and fourth fingers, and the stiffening of the first and second fingers of the left hand.   After his accident and as his disability developed, defendants entered into compensation agreements with the plaintiff.   The final one provided:

"The employee's average weekly wage being $19.50, it is agreed that compensation be paid at the rate of $9.75 per week for 65 (not to exceed 150 weeks), and at the proper rate per week during partial disability if he becomes legally entitled to compensation for partial disability, all in accordance with the provisions of the Michigan workmen's compensation law."

The agreement was approved by the board and compensation was paid for the 65 weeks.   About this time, or a few weeks earlier, plaintiff returned to work for the Dort Motor Company, working at a gluing machine until the Dort Company moved its plant from Belding to Kalamazoo.

When injured Mr. Webber was receiving $3.25 per day.   After his injury he was paid the same wage for a time and then the wages were raised to $3.50 a day.

Wages had become higher during that time.    When the Dort Company left Belding in September, 1920, plaintiff expressed a willingness to go with the company.    He then looked for work in Belding.    He was unable to find any and started truck farming on 7 acres of land which he owns near Belding.    He was so engaged when his testimony was taken in May, 1921.

Defendants on February 10, 1921, filed a petition stating that Mr. Webber "prior to the expiration of 65 weeks from the date of the    *   *   *    accident *   *   *    returned to the employment in which he was working at the time of the accident, and that he was then, and ever since has been, and is now, and will always be in the future, able to resume the employment in which he was working at the time of the accident," and prayed that the case be closed.    Mr. Webber's counsel filed an answer denying the allegations of the petition.    The department ordered:

"It is ordered and adjudged that the said petition should be and the same is hereby denied, and

"It is further ordered and adjudged that the applicant is not entitled to recover compensation from said respondents for the period from March 17, 1921 (1920), the date of last payment until the date when he ceased to be employed by said respondents, and that from said date until the present time, he is entitled to receive and recover for partial disability, in the sum of $4.87½ per week, and that he shall continue to receive compensation in the said amount so long as his disability continues to be the same as at the present time, all in accordance with the provisions of the workmen's compensation law."

It is this order of which complaint is made.

In their petition for the writ of certiorari defendants alleged that the department erred in holding as a matter of law that Mr. Webber was partially disabled.    Counsel say:

"We must bear in mind that the mere fact that Webber has two partially stiff fingers does not entitle him to compensation. In *Leitz* v. *Labadie Ice Co.*, 211 Mich. 565, applicant had to work seated and, in walking, a crutch was necessary. In *Kling* v. *National Candy Co.*, 212 Mich. 159, injured lost the motion of the third and fourth fingers, and the little finger was somewhat stiffened which resulted, as the late Justice BROOKE stated in speaking for the court, in 'quite materially reducing the efficiency of the left hand.' And yet compensation was denied in both cases.

"Any inability to earn as great a wage as when injured must be due to the stiffness of Webber's two fingers. We say this because defendants have paid applicant for the loss by amputation of half the thumb and the third and fourth fingers, in accord with section 5440, 2 Comp. Laws 1915.  *  *  *

"Therefore having been paid in full for the two fingers and the thumb, Webber is only entitled to further compensation if the fact that he cannot get the tips of his first and second fingers closer to the palm of his hand than an inch is the sole cause of any incapacity. In other words, we have the same case here that we would have if Webber still had a whole thumb and the third and fourth fingers, but had his second and third fingers somewhat stiffened.

"Thus we have a case in which a common laborer has two fingers on his left hand somewhat stiffened as a result of an accident.  *  *  *  Webber is in precisely the same position as any common laborer who has two fingers of his left hand somewhat stiffened by an accident (because he has been paid in full for the amputations), and is then able to and does resume his employment as a common laborer at at least as high a wage as when injured. He is not entitled to compensation for any disability."

It is true that to justify the order made by the board it must be shown that the inability to earn as great a wage as when injured is due to the results of the accident upon the two remaining fingers of plaintiff's left hand. It is also

true that plaintiff has been compensated for the loss of his thumb and the two fingers that were amputated, but the payment of this compensation did not restore the thumb and two fingers, and if plaintiff is to earn anything in the future he must do it with the hand he has got, so that the important question is, Has he less earning capacity because of the two stiffened fingers than he would have if the fingers were as good as they were before the accident? There is plenty of testimony from which the inference may be fairly drawn that the earning capacity of plaintiff to do either common labor or skilled labor is less than it would be if the fingers were normal. We think the case is within a line of cases of which *Limron* v. *Blair*, 181 Mich. 76; *Green* v. *Buick Motor Co.*, 201 Mich. 86; *Schimmel* v. *Pressed Steel Co.*, 206 Mich. 449, and the cases cited therein, are examples.

The award is affirmed, with costs to the plaintiff.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.